OPINION OF THE COURT
Simons, J.
A jury has convicted defendant of criminal possession of a controlled substance in the third degree and the Appellate Division has affirmed. He seeks reversal contending that (1) he was denied his constitutional and statutory right to be present during a material stage of the proceedings (see, US Const 6th, 14th Amends; NY Const, art I, § 6; CPL 260.20) and (2) the court’s instruction on reasonable doubt deprived him of due process of law under the Federal and State Constitutions (US Const 14th Amend; NY Const, art I, §6). We agree that defendant was denied the right to be present during a material stage of the trial and that a portion of the court’s instruction was erroneous. We therefore reverse the order of the Appellate Division.
I
Defendant’s first claim is based upon his absence during *250 part of the proceedings when the jury was impaneled. He was present in the courtroom when the court began the voir dire by asking prospective jurors to respond orally to questions contained in a questionnaire and to follow-up questions posed by the court and counsel. Thereafter, several prospective jurors, at the court’s invitation, went to the bench to speak about matters they did not wish to discuss publicly. The discussions were held on the record and in the presence of counsel, but without defendant. They addressed such matters as whether individual jurors would be able to remain objective despite experiences as crime victims or relationships with people who had been arrested, and whether they thought that defendant was guilty merely because he had been charged with participating in a drug sale. The court also asked at least one juror whether she could objectively assess the testimony of a police officer without being influenced by her friendships with other police officers.
As we have noted before, a defendant has a fundamental right to be present during any material stage of the trial (see, CPL 260.20; People v Turaine, 78 NY2d 871, 872; People v Mullen, 44 NY2d 1, 4-5) and questioning during the impaneling of the jury may constitute a material stage of the trial (see, People v Sloan, 79 NY2d 386; People v Velasco, 77 NY2d 469). A court may conduct side-bar discussions with prospective jurors in a defendant’s absence if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments (see, People v Velasco, 77 NY2d, at 472-473, supra). The court may not, however, explore prospective jurors’ backgrounds and their ability to weigh the evidence objectively unless defendant is present. Defendants are entitled to hear questions intended to search out a prospective juror’s bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person’s answers so that they have the opportunity to assess the juror’s "facial expressions, demeanor and other subliminal responses” (see, People v Sloan, 79 NY2d, at 392, supra).
By questioning the prospective jurors’ ability to weigh evidence objectively and to hear testimony impartially, the court violated defendant’s right to be present during a material part of the trial. Moreover, because defendant had a fundamental right to be present, his failure to object to being excluded from the side-bar discussions is not fatal to his claim (see, People v Dokes, 79 NY2d 656, 662).
*251 II
Defendant also contends that the court’s charge on reasonable doubt was erroneous. In its main charge, the court instructed the jury that:
"A reasonable doubt is a doubt based upon reason.
It is a doubt for which a juror can give a reason if he or she is called upon to do so in the jury room.
It must be a doubt based upon the evidence or the lack of evidence in this case.”
The court delivered somewhat similar instructions during the jury’s deliberations in an Allen charge (see, Allen v United States, 164 US 492, 501-502):
"You swore that, if you have a reasonable doubt, I repeat, a reasonable doubt, on any relative point or material element or on the evidence or lack of it, and when one or more of your fellow jurors questioned you about it, you would be willing and able to give him what you believe is a fair, calm explanation for your position based upon the evidence or the lack of evidence in this particular case.”
Defendant claims that these instructions deprived him of a fair trial because they unfairly advised the jury that a juror’s doubt about guilt was not "reasonable” unless the juror was able to articulate the basis for it and because the instruction improperly shifted the burden of proof to defendant. We conclude the instruction in the main charge did not suffer from those faults but that the instruction in the Allen charge did. The difference is between a charge which essentially defines the degree of clarity and coherence of thought necessary for the jurors to conclude they harbor a reasonable doubt and one which imposes an affirmative obligation on the juror to specifically articulate the basis for such doubt.
Reasonable doubt, the standard by which criminal guilt or innocence must he determined, is a nebulous concept not susceptible of precise definition. Necessarily, trial courts must use general terms to explain to the jury the important yet subtle difference between a reasonable doubt and one which is based on conjecture or caprice. Nonetheless, the distinction is critical, for the essence of the jury system is the deliberative process by which a number of intellects are brought to bear on assessing and evaluating the evidence presented at trial to *252 arrive at a just verdict. A decision based on a whim or a hunch involves no intellectual effort and the basis for it cannot be expressed to, or evaluated by, fellow jurors and if the system is to work as intended, the jurors must engage in reasoned discussion of the evidence. Thus, it is not surprising, nor improper, for a court to instruct the jury that a reasonable doubt is one for which a reason can be given, nor to augment that definition with an explanation that the doubt should be sufficiently clear so that the juror would be capable of giving a reason for his or her views. Indeed, it is difficult to envision how jurors could follow the manifestly proper instructions of the court to listen to other jurors, give their views careful consideration, and reason together when considering the evidence if none of the individual jurors were able to express the reasons underlying their vote (see, People v Guidici, 100 NY 503, 510). Consequently, for over 100 years we have approved language defining a reasonable doubt as one which a juror could, if called upon to do so, express or articulate (see, People v Malloy, 55 NY2d 296, cert denied 459 US 847; People v Guidici, 100 NY 503, supra; People v Lagroppo, 90 App Div 219, affd 179 NY 126; see also, People v Serrano, 170 AD2d 269, lv denied 77 NY2d 1000; People v Jones, 162 AD2d 204, lv denied 76 NY2d 859; People v Quinones, 123 AD2d 793).
The language used in the Allen charge, however, went beyond permissible bounds by placing on each juror the express duty of giving a "fair, calm explanation for your position”. Manifestly, the burden of proving guilt beyond a reasonable doubt in a criminal proceeding must always remain with the People (see, In re Winship, 397 US 358). An instruction that requires jurors to supply concrete reasons "based upon the evidence” for their inclination to acquit implicitly imposes on defendants the burden of presenting a defense that supplies the jurors with the arguments they need to legitimize their votes (see, State v Cohen, 108 Iowa 208, 78 NW 857, 858; Siberry v State, 133 Ind 677, 685, 33 NE 681). As such, the charge actually reverses the constitutionally required principles that the defense bears no burden and that it is the prosecution that must introduce evidence sufficient to persuade the fact finder, beyond a reasonable doubt, of the defendant’s guilt (see, Pettine v Territory of New Mexico, 201 F 489, 496-497). Consequently, the instruction in the court’s Allen charge violated the Due Process Clauses of both the State and Federal Constitutions. While the instructions con *253 tained in the court’s main charge did not constitute reversible error, to avoid error trial courts would be wise if using similarly worded instructions in the future to follow them with a clarifying statement that the jurors have no obligation to articulate the basis for their doubts.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.
Order reversed, etc.